Terhune *v.* Oldis.

RICHARD P. TERHUNE, executor of the last will and testament of PETER R. TERHUNE, deceased, appellant,

*v.*

MARGARET OLDIS, respondent.

1. Possession of a deed formally executed by the grantee therein is presumptive evidence of its delivery to him.

2. The fact that the grantor retains actual possession of a deed is evidence of its non-delivery, but there may be delivery, though he retain such possession.

3. To show delivery, there must be proof of that which evinces an intention on the part of the grantor to part with the deed and pass the title, and this intention may be shown either by the circumstances of the transaction or by the words or acts of the grantor.

4. The acknowledgment of the execution and delivery of the deed before a proper officer, and the recording of the deed, by the grantor, are acts of such significance that their proof establishes, *prima facie*, delivery of the deed.

5. A son executed a mortgage for $8,000 to his father, and duly acknowledged delivery, before a master in chancery, and four months thereafter caused it to be registered. After his father's death, being executor of his father's will, he admitted that he was then indebted to his father's estate, among other moneys, in the sum of $8,000. Four years thereafter, while the estate remained unsettled, he wrote upon the mortgage that he, as executor, had received payment in full of both principal and interest, and then caused the registry of the mortgage to be canceled—*Held*, that the mortgage must be taken to have been delivered, and that the evidence establishes a *prima facie* case as to the indebtedness of the son to the estate.

6. In such a case the executor will not be permitted to show, by his own testimony, that the mortgage was mere security for his payment of notes that the testator had endorsed for him.

Terhune v. Oldis.

7. Where an executor is indebted to his testator's estate in the sum of $5,000, for which he gave the testator a note which he afterwards caused to be inventoried as part of the estate, and shows that he has not been able to pay the principal of the note, but does not show that he has been unable to pay the interest upon the principal, he will be charged with that interest.

8. An executor, largely indebted to his testator's estate, will not be allowed to pay a claim that he holds against that estate out of the cash in his hands, but will be required to offset his claim and indebtedness.

On appeal from the Bergen county orphans court.

*Mr. A. D. Campbell,* for the appellant.

*Mr. J. M. Van Valen,* for the respondent.

THE ORDINARY.

The appeal in this case is from the decree of the orphans court of Bergen county upon exceptions to the account of the appellant, as executor.

The testator, Peter R. Terhune, died in January, 1879, and the account in question was filed in September, 1885. It is the first account that the executor has rendered, and is termed by him an intermediate account, because he claims that a final settlement of the estate and distribution of the moneys in his hands cannot be made until the termination of an annuity, which is charged upon the estate, by the will, in favor of the testator's widow during her life or widowhood. The account is unquestionably final as to that which is settled by it. *Pomeroy* v. *Mills, 10 Stew. Eq. 578.* It is intermediate merely in the sense that it is not the last account that the executor must render. Though it be not the last account, it should include everything that has been done in the administration of the estate to the time it is filed.

The first objection, presented by the petition of appeal, is to that part of the decree which directs that the executor be charged with $8,000, the principal, which was secured to be paid to the testator by a mortgage made by the appellant and his wife in August, 1875, and interest upon it from March 2d, 1880, the

day upon which the executor caused the registry of the mortgage to be canceled, to the date of filing the account. The main contention in the case is upon this part of the decree.

In proof of the indebtedness thus charged, the husband of the respondent and the respondent herself, were sworn. The husband testified that, shortly after Peter Terhune's death, the appellant told him, in the presence of the respondent, who is the appellant's sister, that he, the appellant, was indebted to the testator in the sum of $13,000—$5,000 upon a note and $8,000 upon a mortgage—and that, at another time, when the inventory was being taken at the house of the decedent, the appellant re-iterated the statemen the had made as to his indebtedness, and added that he would not inventory the $8,000 mortgage because "it would run the inventory up too high," but that he would "bring it in when he brought his account in."

The respondent testified that, shortly after her father's death, the appellant said that he owed his father's estate $13,000— $5,000 upon a note and an $8,000 mortgage. She stated that her husband was present at this interview, and that she thought that the appellant's wife was also there. Added to this testimony, a bond and mortgage were produced from the possession of the appellant, proved by the subscribing witness to them, and offered in evidence. The bond bears date on the 25th day of August, 1875, and is in the penal sum of $16,000, and is conditioned for the payment of $8,000. Nothing is said in it, either as to interest or as to the time when the principal is payable. It is in the handwriting of the accountant, and is signed and sealed by him. There are no endorsements of payment of either principal or interest upon this instrument. The mortgage is also in the handwriting of the appellant, and is signed by him and his wife. The seals have been torn off. This instrument was witnessed, and bears the certificate of a master of the court of chancery that the appellant and his wife signed, sealed and delivered it as their voluntary act and deed, and that the wife separately acknowledged that she so executed it without fear &c. of her husband.

Like the bond, the mortgage fixed no date at which the money secured by it should be paid, and is silent as to interest. At the

Terhune v. Oldis.

foot of this document, in the handwriting of the appellant, is a receipt, in the following words :

" Mch. 2, '80—Received principal and interest in full, and may be canceled of record.

" R. P. Terhune, Executor."

The mortgage is shown to have been registered in the office of the clerk of Bergen county on January 22d, 1876, and to have been canceled of record on March 25th, 1880.

In answer to the case made by these proofs, the accountant testified that he caused the mortgage to be registered, and took it from the clerk's office after the registration was completed, and that afterwards he receipted it, as above set forth, upon being advised that he must do so to have it canceled, and then caused it to be canceled of record, and that the testator never held it. Also, that his sister, the respondent, was made aware of the existence of the mortgage just after the inventory of the father's estate had been made ; that he told her of it, at his house, he thinks in the presence of her husband, and that it had been executed to protect the testator because of endorsements on notes which he, the accountant, had given, and that when the notes were paid he proposed to cancel the mortgage. He stated that he did not remember any other conversation with his sister, nor did he remember the conversations to which she and her husband have testified. He said that he did not, as executor, receive any money or valuable thing for the mortgage or for its cancellation. He offered to testify that the mortgage was given to secure his father from loss by reason of his endorsement of several notes for him, and that the notes referred to were all paid when the mortgage was canceled, and also, that the mortgage was never delivered to the testator. This offer was overruled by the court, and I think properly, because of the incompetency of the accountant to testify to any transaction with or statement by the testator. The ruling is within *Smith* v. *Burnet, 8 Stew. Eq. 314.*

It is insisted by the appellant that enough appears in the case to show that the bond and mortgage were never delivered to the testator, and that, in absence of the establishment of delivery of

those papers, the testimony of the exceptant and her husband as
to his declarations, contradicted as it is by his testimony, is not
sufficient to justify the charge of $8,000, and interest, against
him by the decree.

These papers are certainly valuable adjuncts to the respondent's
proofs of the alleged indebtedness, if they are to be considered
as having been delivered to the decedent, and for this reason it
is important to determine whether delivery of them has been
established.

The possession of a deed, formally executed, by the grantee
therein is presumptive evidence of the delivery of it to him
*Farlee* v. *Farlee, 1 Zab. 279 ; Black* v. *Shreve, 2 Beas. 455 ;
Benson* v. *Woolverton, 2 McCart. 158 ; Brown* v. *Brown, 6 Stew.
Eq. 650,* but it is not necessary, to constitute complete delivery,
that the instrument should leave the actual possession of the
grantor.    *Folly* v. *Vantuyl, 4 Hal. 153 ; Crawford* v. *Bertholf,
Sax. 458 ; Cannon* v. *Cannon, 11 C. E. Gr. 316 ; Ruckman* v.
*Ruckman, 6 Stew. Eq. 354.*    To show delivery there must be
proof of that which evinces an intention on the part of the
grantor or mortgagor to part with the instrument, and, of
course, to pass the title.    This intention may be made to ap-
pear, either from the circumstances of the transaction, or from
the acts or words of the grantor.    *Crawford* v. *Bertholf, Folly*
v. *Vantuyl, Cannon* v. *Cannon, Ruckman* v. *Ruckman,* and
*Brown* v. *Brown, supra,* and *Armstrong* v. *Armstrong, 4 C. E.
Gr. 357.*    A delivery may be by words without acts or by acts
without words, or by both acts and words.    *Shep. Touch. 58.*

The certificate of a proper officer, made under the statute,
that the grantor signed, sealed and delivered the deed or mort-
gage as his voluntary act and deed, is cogent evidence of delivery.
*Farlee* v. *Farlee, 1 Zab. 279.*    Also the registration of a deed or
mortgage is *prima facie* evidence of its delivery.    *Devlin on
Deeds § 292.*    On the other hand, the retention of a deed by the
grantor is strong evidence of non-delivery.    *Farlee* v. *Farlee,
supra.*

In this case the bond and mortgage were dated on the 25th
day of August, 1875, and the mortgage was acknowledged by

the mortgagor and his wife on the same day, and registered about four months thereafter, on January 22d, 1876. The registry remained uncanceled for more than four years, and until a year after the death of the mortgagee. The mortgage was then produced by the mortgagor (who occupied the dual position of mortgagor and executor of the mortgagee, and who, as executor of the mortgagee, had taken possession of all his papers), and receipted by him as executor, and then canceled of record. Two credible witnesses swear that a few months before this receipt was written the same executor stated to them that he owed to the testator's estate $8,000, secured by mortgage. I think that these proofs present very strong evidence, and establish, at least *prima facie*, the delivery of the mortgage.

The appellant fails to break down the case thus made. On the contrary, while he testified that the decedent never held the mortgage, he, at the same time, offered to show, by his own testimony, that the office of the mortgage was to secure the decedent from loss because of his endorsement of notes for the appellant, and that that office has been terminated by his payment of those notes. He testified that he declared to the respondent, soon after the estate was inventoried, that the mortgage existed to protect the decedent from loss by reason of the endorsements. A declaration of this kind tends to strengthen the *prima facie* proof of delivery rather than to weaken or break it down, for, if the mortgage became valid for any purpose, it must have been delivered. If the appellant held the mortgage and regarded it as an existing security and caused it to be registered, its delivery must thereby have been completed, for his intention that it should be regarded as a subsisting security was thereby declared. And this is so, even though he may subsequently have taken it from the registry office and retained it in his possession.

The bond and mortgage must then be considered as having been delivered. By their terms the appellant acknowledged an indebtedness of $8,000 to the decedent. After the death of Peter R. Terhune, as has been above stated, he acknowledged to the respondent and her husband that he was yet indebted to his father in the sum of $8,000. Nothing in the case warrants my

disbelieving the testimony of these witnesses as to this acknowl-
edgment.    I do not see how the orphans court could, under the
proofs, do otherwise than charge the executor with the $8,000.
The charge of interest upon this sum is as favorable to the
accountant as possible.    It commences at the time when the
accountant saw fit to declare upon the mortgage that he had
received the principal named in it, and then cancel it.

As the proofs stand, I think that the decree is correct as to
this exception to the account.

The second objection to the decree is that the appellant is
charged by it with $40 interest, collected from one Hunter.
Upon the argument, it was admitted that the decree is correct
in this respect.

The third contention against the decree is because it charges
the appellant with interest from June 1st, 1868, upon a promis-
sory note for $5,000, which he gave to the decedent.

The note in question was inventoried by the executor, and
appraised at its face value.    The executor in his account charges
himself with the amount of the inventory appraisement, and,
under the sixth orphans court rule, annexes to his account a
schedule of the assets of which the balance of the estate in his
hands consists, in which he mentions the note in question.    He
has held the entire balance of the estate in his hands for nine
years, under the pretence that it is necessary to do so because the
will subjects the estate to the payment of an annuity of $150 to
the widow of the decedent during her life.    He now says that
the note has never been paid, because he has not been able to
pay it; but he does not say that he has not been able to pay
a portion of the principal of the note, or that he has not been
able to pay the interest.    The rule is that where an executor
or administrator owes the estate, and is solvent and able to pay,
the amount of the debt will be considered, in law and in equity,
as so much money in his hands; but if it is shown that he has
been, and is, unable to pay, and has not paid, he will not be
charged with the debt as cash.    *Harker* v. *Irick, 2 Stock. 269;
Baucus* v. *Stover, 24 Hun 109; United States* v. *Eggleston, 4
Sawyer 199.*    But the proof of the inability to pay must be

complete and satisfactory. *Ordinary* v. *Kershaw, 1 McCart. 527.*

The only proof offered by the accountant in this case is his unsupported statement, and even that does not go to the extent of showing exactly his pecuniary ability. It does not show that he could not have paid the interest upon his note. In the exercise of good faith he should have paid this interest, even if he was unable to pay the principal. I am of opinion that this item was also properly charged by the orphans court.

It appears, under the fourth objection to the decree, that the decedent was indebted to the appellant in the sums of $988.31 and $177.10, and that the appellant has taken credit for having paid these sums out of the cash in his hands. The orphans court declined to credit him with that payment, and directed that credit should be allowed him for the sums mentioned, upon his indebtedness to the estate. I think that this determination was correct. These sums were assets in the appellant's hands for the payment of his indebtedness to the estate. To their extent he certainly was able to pay the interest on his note of $5,000. Had a third person, indebted to the estate, presented these bills for payment to the executor, he would undoubtedly have offset the indebtedness to the estate, and paid the bills in that way. Good faith to his trust and common honesty alike require that he should deal in the same way when he alone is interested as both debtor and creditor.

Substantially, all the exceptions to the appellant's account were decided against him by the orphans court, and I think they were of such a character as to justify that court in charging him with the costs of the proceedings concerning them.

The decree of the orphans court will be affirmed, with costs.